**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49597**

| | |
|---|---|
| In the Matter of: Jane Doe I, A Child Under Eighteen (18) Years of Age. | ) ) |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) |
| | ) **Filed: August 9, 2022** |
| | ) |
| Petitioner-Respondent, | ) **Melanie Gagnepain, Clerk** |
| | ) |
| v. | ) **THIS IS AN UNPUBLISHED** |
| | ) **OPINION AND SHALL NOT** |
| JANE DOE (2022-07), | ) **BE CITED AS AUTHORITY** |
| | ) |
| Respondent-Appellant. | ) |
| | ) |

Appeal from the Magistrate Division of the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Hon. Victoria Olds, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Nolta Law Office, PLLC; Paige Nolta, Lewiston, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John Spalding, Deputy Attorney General, Boise, for respondent.

---

BRAILSFORD, Judge

Jane Doe (Mother) appeals from the magistrate court's judgment terminating her parental rights to her minor child, L.L. Mother argues the court erred by concluding that she neglected L.L and that terminating Mother's parental rights is in L.L.'s best interests. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

L.L. was born in May 2008 and has many intellectual and physical disabilities. L.L. is autistic, cognitively delayed, and legally blind. Among other things, she has ADHD; pica, a compulsive eating disorder causing her to eat nonedible items; Perthes disease in her hip; and echolalia, a communication disorder. L.L. requires supervision twenty-four hours a day with one-on-one care, and she will never be able to function independently.

1

Mother has a long history with the Idaho Department of Health and Welfare related to L.L.'s care. Mother also has a long history of drug addiction and of attempts to treat her addiction. According to Mother's testimony, she has been addicted to methamphetamine "off and on for most of [her] life."

In November 2019, Mother relapsed and contacted the Department about having L.L. placed in a residential care facility. Thereafter, Mother left L.L. in the care of a person who was "under the influence of drugs"; went to visit Mother's husband,[1] who was in a drug treatment facility; and unexpectedly checked herself into the facility for inpatient treatment. After the person caring for L.L. attempted to leave her at a residential care facility to which she had not been admitted, the Department filed a petition under the Child Protective Act (CPA), and on November 22, 2019, the magistrate court granted the Department temporary custody of L.L.

In January 2020, the magistrate court approved a case plan identifying tasks for Mother to complete and reunification as the primary permanency goal. Among other tasks, the case plan required Mother to complete substance abuse treatment and maintain sobriety, to secure and maintain stable housing, to engage in staff and educational meetings regarding L.L.'s needs, to demonstrate a clear understanding of L.L.'s specific needs and have strategies to meet those needs, to be aware of L.L.'s medical needs and be able to articulate protocols to meet those needs, and to demonstrate the ability to ensure L.L.'s physical safety by removing harmful objects from the home and providing appropriate adult supervision for L.L.

In January 2021, the magistrate court held a review hearing and changed the permanency goal from reunification to termination of parental rights. In February, the Department filed a petition to terminate Mother's parental rights, and the court scheduled a termination trial for March. Mother moved to continue the trial, however, because she was receiving inpatient drug treatment in March. The court granted this motion, vacated the trial, and reset it for August. In August, however, the court continued the trial to allow the parties to mediate. After mediation failed, the court rescheduled the trial for January 2022.

---

[1] Mother's husband at the time of the termination hearing was not L.L.'s biological father. The magistrate court also terminated the parental rights of L.L.'s father. That decision, however, is not at issue in this appeal.

At the two-day termination trial in January 2022, the magistrate court heard the testimony of Mother, L.L.'s father, the director of L.L.'s residential care facility, the manager of L.L.'s former residential care facility, two Department social workers, a substance abuse counselor, L.L.'s maternal grandmother, and Mother's neighbor. After the trial, the court entered findings of fact and conclusions of law, concluding Mother neglected L.L. by failing to provide her with proper parental care and control necessary for her well-being, by failing to perform the case plan, and by being unable to discharge Mother's parental responsibilities. *See* Idaho Code §§ 16-1602(31)(a); 16-2002(3)(b), 16-2005(1)(d). Further, the court concluded terminating Mother's parental rights is in L.L.'s best interests.

Mother timely appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated.

3

*Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

## III.

## ANALYSIS

### A. Neglect

Mother contends substantial and competent evidence does not support the magistrate court's conclusion that she neglected. L.L. Neglect occurs if a child "is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omissions of his parents." I.C. § 16-1602(31)(a) (defining neglect). Further, neglect occurs when a parent has failed to comply with the court's case plan; the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months; and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b). Neglect also occurs if a parent "is unable to discharge parental responsibilities and such inability will continue for a prolonged indeterminate period." I.C. § 16-2005(1)(d). In this case, the court concluded Mother neglected L.L. under each of these provisions, and Mother challenges each of these rulings.

4

### 1. Neglect by conduct or omission

Mother challenges the magistrate court's conclusion that she neglected L.L., as defined by I.C. § 16-1602(31)(a). In support of this conclusion, the court found:

> The pattern of financial and housing instability, extended periods of drug use, interspersed with short periods of relative stability (at least as to sobriety), failure to obtain and engage in supports and services in the community, lack of knowledge of the [individualized education plan] and school details, and medical neglect supports [sic] a finding of neglect.

Substantial and competent evidence, including Mother's testimony, supports these findings. Mother testified about her housing instability, including repeatedly changing residences; moving into the home of her husband's mother and being kicked out "a lot"; "couch hopp[ing]"; being incarcerated; and living either with friends, in various apartments, at the YMCA, or with her mother. Mother also acknowledged her lengthy drug addiction[2] and repeated relapses. She testified that she had been addicted to methamphetamine "[o]ff and on for most of [her] life" and that her methamphetamine use "negatively affect[ed]" L.L. Mother also acknowledged that she would need "a care provider to help [her]" to provide L.L. "one-on-one care" and that Mother had not engaged such a provider or any services for L.L. since moving from Washington back to Idaho.[3] While Mother contends "there was no evidence of medical neglect," the evidence that

---

[2] Mother challenges the magistrate court's finding that "there was no direct acknowledgement [Mother] was unable to parent [L.L. and] that drugs would cause [Mother] to lapse in her supervision and care." Contrary to this finding, Mother notes she acknowledged that "sometimes her substance abuse would cause her to not be nice or as lovable as she should be"; "her drug use sometimes interfered with her ability to watch the child 24/7"; and "she sought out the Department's help to place [L.L. in a residential care facility] because [L.L.] deserved more than she was getting from Mother." We agree with Mother that the record shows she acknowledged her drug use and its adverse effect on L.L. Regardless, Mother's acknowledgement does not support her position that the court erred by ruling she neglected L.L.; rather, it supports the ruling.

[3] Contrary to this testimony, Mother notes she also testified that L.L. is receiving the same services in her present residential care facility that she had been receiving before the Department obtained custody of her. Based on this testimony, Mother challenges the magistrate court's finding that "Mother admitted [L.L.] had no services in place and insurance had lapsed before removal, after her move to Idaho" and that Mother neglected L.L.'s needs "for an extended period of time before [L.L.] came into care because no services were set up in Idaho from 2016-2019." The court's findings, however, that Mother failed to engage services and providers to care for L.L. implicitly rejected Mother's testimony to the contrary. We will not reweigh this evidence or the court's credibility determinations. *See State, Dep't of Health & Welfare v. Doe (2019-27)*, 166 Idaho 197, 200, 457 P.3d 849, 852 (2020) (explaining appellate court will not make credibility

5

Mother failed to engage services and providers when caring for L.L. supports this finding. Accordingly, the magistrate court did not err by concluding Mother neglected L.L. as defined by I.C. § 16-1602(31)(a).

Mother criticizes the magistrate court's reliance on *Dayley v. State, Dep't of Health & Welfare*, 112 Idaho 522, 524, 733 P.2d 743, 745 (1987), and *State, Dep't of Health & Welfare v. Doe (2020-37)*, 168 Idaho 74, 79, 479 P.3d 467, 472 (Ct. App. 2021). Citing these cases, the court noted that "neglect includes failing to provide proper parental care even if the child's needs were at times met by others" and found that "Mother abdicated her role as a parent with her child." Mother disputes she neglected L.L. or abdicated Mother's parental role by leaving L.L. with a friend when Mother went to visit her husband and then unexpectedly entered into a drug treatment program. Mother argues that "there is no indication in the trial record that the child suffered neglect from Mother leaving her with this friend." This argument, however, ignores that Mother acknowledged the friend "was under the influence of drugs" at the time and attempted to leave L.L. at a residential care facility at which she was not admitted.

Finally, Mother challenges the magistrate court's statement that seeking the Department's help to place L.L. in a residential care facility "is a blatant sign of [Mother's] inability to parent." She contends that "it should not be the policy of Idaho to determine that actually seeking help from the Department is a 'blatant sign of inability to parent'" and that such a policy "will have a definite dampening effect on parents who are deciding whether to seek help from the Department." We do not construe the court's statement, however, as establishing a "policy." Rather, Mother's request for help placing L.L. in a residential care facility is a factor the court may properly consider in determining whether Mother is capable of discharging her parental responsibilities, and substantial and competent evidence supports the conclusion that L.L.'s needs exceed Mother's capability to care for L.L.

---

determinations); *Doe v. Doe*, 148 Idaho 243, 246, 220 P.3d 1062, 1065 (2009) (explaining appellate court will not reweigh evidence). Rather, we draw all reasonable inferences in favor of the magistrate court's judgment, recognizing the court is best suited to assess, among other things, witness credibility. *Idaho Dep't of Health & Welfare v. Doe*, 164 Idaho 875, 878, 436 P.3d 1224, 1227 (2019).

## 2. Neglect for failure to comply with case plan

Mother also challenges the magistrate court's conclusion that she neglected L.L. by failing to comply with the case plan. *See* I.C. § 16-2002(3)(b) (defining "neglected" to include failure to comply with court orders or case plan). Specifically, the court concluded Mother failed to secure and maintain stable housing, to engage in staff and education meetings, to demonstrate a clear understanding of L.L.'s specific needs, to articulate protocols necessary to meet her medical needs, and to demonstrate Mother's ability to ensure L.L.'s physical safety and appropriate adult supervision.

On appeal, Mother challenges numerous factual findings the magistrate court made in support of its conclusion that she failed to comply with her case plan. Some of these challenged findings include those related to the court's conclusions that Mother did not understand L.L.'s specific needs; did not meet her medical needs; and did not have a plan to ensure her future physical safety and appropriate supervision, as the case plan required. Substantial and competent evidence supports these findings, however.

Contrary to Mother's assertions, the record shows that she had not engaged any providers or services for L.L. since moving from Washington back to Idaho. Further, Mother's future care plan for L.L. involved Mother continuing to work outside the home; moving L.L. into the residence of L.L.'s maternal grandmother, who is bedridden; and having a neighbor, who is uninformed about the extent and nature of L.L.'s needs, assist with L.L's care. Other than this plan, which the magistrate court described as "irresponsible," Mother had not arranged for any services for L.L.'s future care by the time of the termination trial. Although Mother asserts she is unable to do so until she actually has custody of L.L., Mother contradicted this assertion at the termination trial by acknowledging that she "probably should have" contacted potential support resources by the time of trial and that she could not move L.L. out of the residential care facility until Mother "had everything else ready for" L.L. Mother's inability to develop a realistic plan for L.L.'s future care supports the magistrate court's conclusion that "Mother has not demonstrated understanding [of] how to be a safe or protective parent." *Cf. Doe (2020-37)*, 168 Idaho at 82, 479 P.3d at 475 (noting parent's admission about delay in resuming care undermines assertion that parent is able to provide care for child).

Mother also challenges certain statements the magistrate court made in its findings about her compliance with the case plan. For example, Mother challenges the court's statement that

7

"there was a period of time in 2020 when she left [drug treatment] and continued to use illegal substances where she did not maintain consistent communication." Despite this statement, however, the court still found Mother completed the task of maintaining consistent communication with the Department. For that reason, the challenged statement was not a basis for the court's conclusion that she failed to comply with her case plan.

Mother also disputes the magistrate court's statements that she "criticize[d] the number of times [L.L.] has been moved while in [the Department's] custody" and that her husband was "unable to attend [the termination trial] to support her due to his ongoing criminal case issues." The number of times L.L. moved while in the Department's custody and the reason Mother's husband did not attend the termination trial, however, are not relevant to the court's conclusion that Mother failed to comply with the case plan.[4] Despite Mother's many challenges, substantial and competent evidence supports that she failed to perform several case plan tasks and, thus, did not comply with the plan.

In addition to challenging the magistrate court's conclusion that she failed to comply with her case plan, Mother also argues her compliance with the plan was impossible. Impossibility may be a defense for failing to comply with a case plan's requirements. *See Idaho Dep't of Health & Welfare v. Doe (2016-14)*, 161 Idaho 596, 600, 389 P.3d 141, 145 (2016) ("[I]mpossibility may be asserted as a defense to a claim of neglect founded upon failure to comply with the requirements of a case plan."). The impossibility defense is not available, however, if the parent bears responsibility for not complying with the case plan. *Id.* For example, a parent's decision to continue using drugs is not a "product of impossibility resulting from a disability" that provides a defense to a parent's failure to perform a case plan. *Id.*

---

[4]     Mother also disputes numerous other statements in the magistrate court's decision as inaccurate or partially inaccurate. For example, Mother disputes that: (1) one of the facilities at which L.L. resided offered a three-week training course for caretakers; (2) L.L.'s father had custody of her when she was three to five years old because Mother was incarcerated; (3) male care providers do not provide intimate care for L.L. at her current residential care facility; (4) Mother and L.L.'s father lived down the street from a witness; and (5) Mother was upset when L.L.'s father obtained custody of L.L. when she was younger. Mother, however, fails to provide any explanation how these and other purportedly inaccurate or incomplete statements undermined the court's conclusions. Moreover, even assuming these statements were not entirely complete and accurate, as Mother argues, none of them individually or cumulatively overcomes the substantial and competent evidence supporting the court's conclusions.

On appeal, Mother argues that "it was impossible for [her] to comply with the case plan from about March 25, 2020 to the time she moved out of Idaho in December 2020." She contends that at this time, which was during the COVID-19 pandemic, she "was unable to get into an inpatient facility [for drug treatment], was not allowed to attend out-patient services while she was under the influence, and was unable to get clean without the support of an in-patient facility." Mother's decision to use drugs during the case plan's pendency, however, is not a basis to conclude her performance of her case plan was impossible. *See id.* (ruling drug use not grounds to conclude case plan performance was impossible). Moreover, the magistrate court found Mother had adequately performed the case plan task of completing substance abuse treatment and maintaining sobriety. In other words, this task did not contribute to the court's conclusion that Mother did not comply with her case plan. For this reason, the pandemic did not adversely affect Mother's case plan performance. Because substantial and competent evidence supports the court's findings that Mother did not perform certain other case plan tasks, the court did not err by concluding Mother failed to perform her case plan.

3.      **Neglect by inability to discharge parental responsibilities**

Mother also contends substantial and competent evidence does not support the magistrate court's conclusion that she is unable to discharge her parental responsibilities. In support of this conclusion, the court found Mother demonstrated a "pattern of conduct over the child's life" evidencing an inability "to parent responsibly without resort to substances in a long-standing pattern of short recovery, relapse and extended periods of instability." The court also found Mother's marriage to her husband "shows a focus on self and a failure to emotionally prioritize" L.L. despite the instability the marriage has caused her.

Mother argues the magistrate court "completely ignored and dismissed all of the progress [she] made." Substantial and competent evidence, however, supports the court's conclusion that Mother is unable to discharge her parental responsibilities. For example, Mother admitted a pattern of substance abuse, testifying she has attempted treatment "many times" in the past and remained sober only if consequences existed. Mother's conduct during the pendency of this case demonstrates this pattern. For example, Mother unexpectedly entered substance abuse treatment and left L.L. in the care of a person "under the influence," prompting the Department to petition for custody of L.L., but then Mother never completed that program. Three months later, Mother relapsed, and she ultimately did not complete a substance abuse program until March 2021, after

9

the court had already changed the permanency goal from reunification to termination of parental rights.

Regarding the magistrate court's conclusion that Mother's marriage to her husband interferes with her ability to discharge her parental responsibilities, her testimony supports this conclusion. For example, Mother testified that she and her husband fought; she "got kicked out a lot" by her husband "[b]ecause he was under the influence"; he was wearing an ankle monitor for reasons unknown to Mother; and he "just isn't into kids." Additionally, Mother acknowledged her felony probation officer advised Mother not to marry her husband, and her counselor testified she "had multiple conversations [with Mother] about the high risk that [Mother's husband] could pose" to her recovery.[5] Although Mother "had her husband file for divorce and they both signed a stipulation for entry of the divorce before the [termination] trial was over," the court did not find Mother's intention to end the relationship with her husband to be credible. We decline to reweigh the court's credibility determinations. *See State, Dep't of Health & Welfare v. Doe (2019-27)*, 166 Idaho 197, 200, 457 P.3d 849, 852 (2020) (explaining appellate court will not make credibility determinations); *Doe*, 148 Idaho at 246, 220 P.3d at 1065 (explaining appellate court will not reweigh evidence). Accordingly, despite Mother's progress during the case to maintain her sobriety and distance herself from her husband, substantial and competent evidence supports the court's conclusion that she is unable to discharge parental responsibilities and that her inability will continue and is injurious to L.L.

**B.       Child's Best Interests**

Finally, Mother challenges the magistrate court's conclusion that terminating her parental rights is in L.L.'s best interests. Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after

---

[5]       Mother's own testimony refutes her assertion that "the only person there was testimony about warning [Mother] about continuing the relationship [with her husband] was the substance abuse counselor." Mother herself testified her felony probation officer warned her about marrying her husband.

the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

The magistrate court concluded terminating Mother's parental rights is in L.L.'s best interests because she "needs a nurturing home with specially trained caregivers who can offer 24/7 individual attention and supervision." It found that the residential care facility where L.L. is living meets all her needs and provides a "safe, secure, and (most importantly) stable environment that [L.L.] was missing." Further, it found that Mother cannot realistically attend to L.L.'s needs "given the pattern of succumbing to the stress by resorting to illegal substances," "seeking escape from the burden," and "handing [L.L.] off to others."

Challenging the magistrate court's conclusion that terminating Mother's parental rights is in L.L.'s best interests, Mother argues that she "is a protective parent" who has a "strong relationship" with L.L. and who "successfully completed all the treatment the Department required." That Mother has a loving relationship with L.L., obtained substance abuse treatment, and had maintained sobriety does not overcome the court's findings that L.L. requires continuous caregiving in a safe, secure, and stable environment and that Mother failed to demonstrate an ability to meet these needs. Substantial and competent evidence supports these findings, as discussed above.

Mother also argues that terminating her parental rights will make L.L. an orphan, which is "not the policy in Idaho" and that "the Department wants to have a guardianship in place," which does not require terminating her parental rights. The intent of the CPA is "to protect children from parents, guardians or other custodians who pose[] a health and safety threat to their children, and to remove such children from unsafe family environments." *Roe v. State, Dep't of Health & Welfare*, 134 Idaho 760, 766, 9 P.3d 1226, 1232 (2000). Idaho Code Section 16-1601 articulates the CPA's policy and states that "at all times the health and safety of the child shall be the primary concern," although "to the fullest extent possible" the State shall "seek to preserve, protect, enhance and reunite the family relationship." The magistrate court's termination of Mother's parental rights comports with this policy. Substantial and competent evidence supports the court's

11

findings that Mother poses a health and safety threat to L.L. because Mother has failed to demonstrate an ability to care for L.L.'s specific needs, despite the Department's efforts to reunite the relationship. Further, Mother fails to cite any authority that the court is required to consider the Department's permanent placement of the child in determining whether terminating parental rights is in a child's best interests. *See, e.g.*, *Idaho Dep't of Health & Welfare v. Doe (2018-24)*, 164 Idaho 143, 147, 426 P.3d 1243, 1247 (2018) (ruling appellate court will not consider issues not supported by cogent argument and authority); *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 263, 267, 270 P.3d 1048, 1052 (2012) (same).

## IV.

## CONCLUSION

Substantial and competent evidence supports the magistrate court's conclusion that Mother neglected L.L. and that terminating Mother's parental rights is in L.L.'s best interests. Accordingly, we affirm the judgment terminating Mother's parental rights.

Chief Judge LORELLO and Judge HUSKEY **CONCUR**.