# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 44092

| | | |
|---|---|---|
| In the Matter of JOHN DOE, <br> A Child Under Eighteen Years of Age. <br> -------------------------------------------------------- <br> IDAHO DEPARTMENT OF HEALTH AND WELFARE, <br><br>     Petitioner-Respondent, <br> and <br><br> GUARDIAN AD LITEM / CASA, <br><br>     Intervenor-Respondent, <br> v. <br><br> JANE DOE (2016-14), <br><br>     Respondent-Appellant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Boise, July 2016 Term <br><br> 2016 Opinion No. 92 <br><br> Filed: September 9, 2016 <br><br> Stephen Kenyon, Clerk |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Hon. A. Lynne Krogh, Magistrate Judge.

The judgment of the magistrate court is <u>vacated</u> and the case is <u>remanded</u> for additional findings of fact and conclusions of law.

Canyon County Public Defender's Office, Caldwell, for appellant.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent Idaho Department of Health and Welfare.

Scarlett Law, PLLC, Nampa, for respondent Guardian ad Litem/CASA.

---

ON THE BRIEFS

HORTON, Justice.

    This appeal arises from a magistrate court's judgment terminating the parent-child relationship between Appellant Jane Doe (Doe) and her child, M.R. We vacate the judgment and remand for additional findings of fact and conclusions of law.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Doe has a long history of involvement with the Idaho Department of Health and Welfare (the Department), beginning in 2000. Doe was removed from her biological parents in 2000 and 2004 for physical abuse. The abuse resulted in head wounds and scarring and necessitated surgeries. Doe later disclosed sexual abuse by her parents. Her parents consented to termination of their parental rights to Doe in 2004. Doe turned eighteen while in foster care, aging out of the system. Doe gave birth to M.R. in 2011 and began living with M.R. in a separate residence on her parents' property.

In August of 2012, Doe was arrested for aggravated assault. M.R. was sixteen months old at the time of Doe's arrest. Upon her incarceration, Doe "signed over temporary guardianship" of M.R. to her parents. Doe was eventually sentenced to serve five years, with two years fixed, and the court retained jurisdiction. Doe was unsuccessful on her rider, and in June of 2014 the district court relinquished jurisdiction because of Doe's "aggressive behavior" while in prison. Doe testified that the earliest date that she might be released is May of 2017. At that time, M.R. will be six years old. He has not been in Doe's care since her arrest.

In October of 2014, M.R. came into the care of the Department because of physical abuse of another child in Doe's parents' home. A case plan was approved in December of 2014, which included tasks that Doe was to complete while incarcerated. Doe failed to complete certain case plan requirements, specifically, counseling and a parenting class after being transferred to a different prison facility.

On November 12, 2015, the Department filed a Petition for Termination of the Parent-Child Relationship. Following a hearing on March 21, 2016, the magistrate court found that the Department had met its burden of proving, by clear and convincing evidence, two grounds upon which termination could be granted: (1) neglect, due to Doe's failure to comply with her case plan; and (2) Doe's incarceration for a substantial portion of M.R.'s minority. The magistrate court further found, again by clear and convincing evidence, that termination of Doe's parental rights was in M.R.'s best interests. Doe timely appealed.

# II. STANDARD OF REVIEW

"Pursuant to Idaho Code section 16-2005(1), a court may terminate parental rights if it finds that doing so is in the best interests of the child and that at least one of five grounds for termination is satisfied." *In re Doe (2014-23)*, 157 Idaho 920, 923, 342 P.3d 632, 635 (2015).

"The grounds for terminating a parent-child relationship must be proved by clear and convincing evidence." *In re Doe (2013-15)*, 156 Idaho 103, 105–06, 320 P.3d 1262, 1264–65 (2014); *see also* I.C. § 16-2009. "Clear and convincing evidence is evidence that indicates the thing to be proved is highly probable or reasonably certain." *In re Doe (2014-17)*, 157 Idaho 694, 699, 339 P.3d 755, 760 (2014). "This Court must 'conduct an independent review of the magistrate court record, but must draw all reasonable inferences in favor of the magistrate court's judgment, as the magistrate court has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive and to judge the character of the parties.'" *In re Doe (2014-23)*, 157 Idaho at 923, 342 P.3d at 635 (quoting *Doe v. Doe*, 150 Idaho 46, 49, 244 P.3d 190, 193 (2010)).

## III. ANALYSIS

On appeal, Doe asserts that the magistrate court erred in finding neglect, since she was unable to comply with the requirements of her case plan while incarcerated. Doe also contends that her incarceration was not and is not likely to be for a substantial portion of M.R.'s minority, since her incarceration will last a maximum of five years and she will likely be released within a year. Finally, Doe argues that the Department failed to produce evidence that termination is in Doe's best interests.

### A. The magistrate court erred when it failed to consider whether it was possible for Doe to comply with her case plan.

The magistrate court found that the Department had proven neglect, applying the definition of neglect provided by Idaho Code section 16-2002(3)(b).[1] The statute defines neglect as including the failure to comply with court orders or a case plan in a child protective act case if the Department has temporary or legal custody of the child for more than fifteen of the last twenty-two months. I.C. § 16-2002(3)(b). The magistrate court found that Doe failed to comply with the case plan and reunification had not occurred within the statutory period.

On appeal, Doe argues the magistrate court erred by terminating her parental rights based on her failure to complete the case plan. Doe contends her failure to comply with the case plan was beyond her control. Doe argues that completion of the case plan was impossible while she

---

[1] Idaho Code section 16-2002 was twice amended during the pendency of this appeal, effective July 1, 2016, but the text of Idaho Code section 16-2002(3)(b) remained unchanged. 2016 Idaho Sess. L. ch. 360, § 3, p. 1065; 2016 Idaho Sess. L. ch. 265, § 8, p. 717.

was incarcerated and that she performed as many tasks of the case plan as possible while incarcerated. The magistrate court summarily rejected similar arguments from Doe's attorney, stating:

> In this case, the child has been in custody for 17 months, and there's been no progress on the case plan. I realize that that's due to inability, that you've been unable to established [sic] housing, that you've been unable to get the mental health assessment and proceed with the recommendations, that you've been unable to complete the parenting classes approved by the department, that you've been unable to obtain employment to provide for yourself and M.R. *But inability or willfulness or intent are not elements of neglect for failure to complete the case plan.*
>
> *… So the lack of willfulness, the lack of ability is not a defense, it's not an element of what they have to prove.* They have shown failure to complete the case plan....

The Department asserts that Doe's failure to complete tasks within the case plan resulted from her misbehavior while incarcerated. The Department argues that Doe would have been able to make progress on her case plan if she had not had disciplinary issues during her incarceration, and therefore Doe is responsible for her failure to complete the case plan. Although the Department's argument has no small measure of appeal, we are unable to accept it because the magistrate made no findings that connected Doe's conduct with her failure to complete the case plan. To the contrary, the magistrate court unambiguously held that the failure to complete the requirements of a case plan constitutes neglect, even when it is not possible for the parent to complete those tasks. In so holding, the magistrate court erred.

Doe directs us to our decisions in *Doe I v. Doe II*, 148 Idaho 713, 228 P.3d 980 (2010), and *In re Adoption of Doe*, 143 Idaho 188, 141 P.3d 1057 (2006), in support of her claim that the magistrate erred by failing to consider whether it was possible for her to perform the tasks called for by her case plan. She quotes *Doe I v. Doe II*, 148 Idaho at 716, 228 P.3d at 983, where we noted an obvious truth: "For one to willfully fail to do something, he or she must have the ability to do it." Likewise, she notes that we found that a trial court erred by failing to consider evidence of just cause for a parent's failure to provide reasonable support and maintain regular personal contact. *In re Adoption of Doe*, 143 Idaho at 192, 141 P.3d at 1061. These cases could be distinguished from the instant case because different grounds for termination were being considered. In both cases, termination was sought on the basis of abandonment. *Doe I v. Doe II*, 148 Idaho at 715, 228 P.3d at 982; *In re Adoption of Doe*, 143 Idaho at 190, 141 P.3d at 1059. However, we do not find the distinction to be material.

We acknowledge that the text of Idaho Code section 16-2002(3)(b) supports the magistrate's decision, as the statute does not include a requirement of willfulness. Rather, the statute simply requires a parent's failure "to comply with the court's orders or the case plan" and the Department having custody of the child for a specified duration. A statement from this Court may also be read as supporting the magistrate court's view that impossibility is not a defense to a claim of neglect predicated upon Idaho Code section 16-2002(3)(b). We recently stated: "Mother argues that because of her disabilities, the trial court could not have found she willfully failed to comply with the case plan or willfully neglected her children. However, willful neglect and willful non-compliance with the case plan is not the standard." *In re Doe (2014-17)*, 157 Idaho at 700, 339 P.3d at 761.

Nevertheless, we now hold that impossibility may be asserted as a defense to a claim of neglect founded upon failure to comply with the requirements of a case plan. The right to parent one's child is a fundamental liberty interest. *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978). Indeed, the United States Supreme Court has stated that "[t]he liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). Termination of the parent-child relationship is among the most drastic forms of state action which can be conceived. We can discern no principled basis for such action against a parent for circumstances beyond his or her control.

This is not to say, however, that a trial court must find willful non-compliance with the terms of a case plan as a prerequisite to a finding of neglect under Idaho Code section 16-2002(3)(b). Instead, the trial court must find that the parent is responsible, whether directly or indirectly, for non-compliance with the requirements of a case plan.[2] This requirement reflects the reality presented by parents who engage in behavior that results in non-compliance with no apparent thought or consideration of the effect of that behavior upon the case plan. For example, in *In re Doe (2014-17)*, Mother's failure to comply with her case plan consisted of missed visitations, failure to provide required releases, failure to submit to drug testing, continued methamphetamine use and failure to participate in counseling. 157 Idaho at 701, 339 P.3d at 762.

---

[2] In cases where the parent's mental health issues prevent compliance with the terms of the case plan, termination may be sought under Idaho Code section 16-2005(1)(d) if "[t]he parent is unable to discharge parental responsibilities and such inability will continue for a prolonged indeterminate period and will be injurious to the health, morals or well-being of the child."

These failures were not the product of impossibility resulting from a disability; rather, they reflected her decision to continue methamphetamine use with the consequence being non-compliance with her case plan.

Although we have found virtually no reported decisions addressing this issue, the two decisions we have located have likewise distinguished impossibility of performance of a case plan from those instances where the parent bore responsibility for the non-compliance. Thus, in *Champagne v. Welfare Div. of Nevada State Dep't of Human Res.*, 691 P.2d 848 (Nev. 1984) *superseded by statute on other grounds, as stated in In re Termination of Parental Rights as to N.J.*, 8 P.3d 126, 127 (Nev. 2000), the Nevada Supreme Court stated: "The parent, however, still must be shown to be at fault in some manner. The parent cannot be judged unsuitable by reason of failure to comply with requirements and plans that are unclear or have not been communicated to the parent, or which are impossible for the parent to abide by." *Id*. at 857. As a Florida court plainly stated it: "Where a court is terminating parental rights based on a parent's failure to comply with a case plan or a performance agreement, it is axiomatic that the parent must have the substantial ability to comply with the plan or agreement." *In Interest of E.L.H., Jr.*, 687 So.2d 924, 925 (Fla. Dist. Ct. App. 1997).

This approach is consistent with earlier decisions of this Court and the Court of Appeals. For example, in *Idaho Dep't of Health & Welfare v. Doe (2011-03)*, 151 Idaho 498, 260 P.3d 1169 (2011), we upheld the trial court's termination of a father's rights based on neglect. The father argued that "significant difficulties" prevented him from completing all of the requirements of his case plan. *Id*. at 501, 260 P.3d at 1172. Although we did not use words such as "fault" or "responsibility," our decision clearly pointed to the father's actions and inactions as the reason the case plan was not completed:

> the trial court found that, even though John Doe received services under a case plan for two years and had been out of prison for over seven months on the date of the trial, John Doe "utterly and completely failed to complete the two primary requirements of his case plan": (1) providing a safe and stable home environment; and (2) providing a legal source of income for his family. John Doe admitted at trial that he does not have a suitable home environment for his children and that he has no money or job. Since his release from prison ... he has "bounced between friends" for his living arrangements, and he has worked only one day and has lived off of support from friends, food banks, food stamps and clothing vouchers.

*Id*.

Similarly, in *Idaho Dep't of Health & Welfare v. Doe*, 148 Idaho 832, 230 P.3d 442 (Ct. App. 2010), the mother's failure to substantially complete her case plan was the basis for a finding of neglect and termination of parental rights. The Court of Appeals considered the mother's claim that she was "not at fault" for the failure to complete the requirements of her case plan. *Id*. at 837, 230 P.3d at 447. One of the requirements was that the mother "cooperate with the justice system in order to satisfy any pending charges and/or jail time." The Court of Appeals made short shrift of the mother's claim that she had fulfilled this condition "to the best of her ability":

> Doe's actions compounded her legal problems rather than resolved them. While it is true that the probation violation and the subsequent failed rider did not exist at the time the case plan was created, Doe was on felony probation when the case plan was created and it was her responsibility to follow through with the terms of her probation. Doe was required to "resolve" her legal problems. She was aware of the consequences, should she fail to be successful. Doe repeatedly violated the terms of her probation while in Boise, and her probation officer in Boise, Julie Bryant, testified that she had exhausted her resources there. She was given the option to transfer her probation to Lewiston to see whether she could be successful or to continue in Boise and receive a probation violation. In Lewiston, she again violated the terms of her probation. Thereafter, she was given an opportunity to be successful on a rider. However, she was involved in an altercation with another inmate. Consequently, the district court relinquished jurisdiction and ordered into execution her original sentence of five years incarceration, with two years determinate. Thus, Doe's contention that she needs more time to finish her incarceration and resolve her legal issues is unavailing as Doe's actions resulted in her extended incarceration.

*Id*.

Earlier in this opinion, we stated that the Department's arguments in defense of the magistrate's decision had "no small measure of appeal." However, it is the role of the trial court, not this Court, to make the factual finding whether Doe bears responsibility for her failure to comply with the case plan. The magistrate court made no findings as to whether Doe was responsible for the circumstances which led to her failure to complete the case plan.

### B. The magistrate court's decision that Doe had been and was likely to be incarcerated for a substantial period of M.R.'s minority applied an erroneous legal standard.

The magistrate court held that Doe had been and was likely to be incarcerated for a substantial portion of M.R.'s minority and thus, termination was appropriate under Idaho Code section 16-2005(1)(e). The statute provides that termination may occur when "[t]he parent has

been incarcerated and is likely to remain incarcerated for a substantial period of time during the child's minority." The magistrate's oral findings were as follows:

> I'm also finding grounds for termination have been shown by clear and convincing evidence based on incarceration. The evidence shows that the offense was committed after the child was born. Mom has been in custody since the child was one year and four months old. Mom will continue to be in custody—the child will be almost six years old even at the best possible date. And mom's testimony is that she's committed into getting into a program in July that will hopefully get her out of prison before the end of the year. That still puts, out of this child's six-year life, five years that mom's not a part of it.
> ...
> In this case, it's been five years. It's a substantial period of the child's life. And therefore the State has shown grounds for termination based on incarceration.

On appeal, Doe argues that her incarceration does not cover a substantial portion of M.R.'s minority, since she will only have served five years out of M.R.'s eighteen years of minority. In support of its argument that five years is a substantial portion of M.R.'s minority, the Department quotes from a decision of the Court of Appeals, where that court defined "substantial" as "important, essential, or considerable in quantity." *Idaho Dep't of Health & Welfare v. Doe (2010-28)*, 151 Idaho 605, 610, 261 P.3d 882, 887 (Ct. App. 2011) (quoting *Merriam Webster Collegiate Dictionary* 1174 (10th ed. 1994)).

The parties' arguments are predicated upon the same erroneous legal standard as the magistrate applied. Under Idaho Code section 16-2005(1)(e), the trial court is not asked to decide whether the parent has been and will be incarcerated for a substantial period of the child's minority. Instead, the trial court must make two factual findings: (1) "[t]he parent has been incarcerated"; and (2) the parent "is likely to remain incarcerated for a substantial period of time during the child's minority." By focusing on the duration of Doe's past incarceration, rather than the expected duration of her future incarceration, the magistrate court erred.

We recognize that the Court of Appeals has stated: "I.C. § 16-2005(1)(e) does not require an analysis of whether the prospective period of the parent's incarceration constitutes a substantial percentage of the time remaining in the child's minority." *Id*. We disagree. In a decision which predated the magistrate court's ruling in this case, we emphasized the prospective analysis to be employed when considering Idaho Code section 16-2005(1)(e):

> In 1996, Idaho Code section 16-2005 was amended to add as a ground for termination of a parent's parental rights that the parent "has been incarcerated and has no possibility of parole." Ch. 365, § 2, 1996 Idaho Sess. Laws 1222, 1225. As drafted, *the length of incarceration prior to the time of the evidentiary hearing*

8

*regarding the termination would not be relevant*. What mattered was that the parent had no possibility of parole. In 2005, this provision was replaced with the current provision, which states that "[t]he parent has been incarcerated and is likely to remain incarcerated for a substantial period of time during the child's minority." Ch. 391, § 49, 2005 Idaho Sess. Laws 1261, 1299 I.C. § 16-2005(1)(e). The change in the statute was meant to lessen the period of the parent's future incarceration. Before 2005, the parent must have "no possibility of parole." After the 2005 amendment, the parent must be "likely to remain incarcerated for a substantial period of time during the child's minority." *The statute would not authorize the termination of parental rights regarding a parent who has been incarcerated but is not likely to "remain incarcerated for a substantial period of time during the child's minority."* In context, the word "incarcerated" refers to someone who has been convicted of a crime and is serving a sentence of incarceration. *The legislature has not defined what is a substantial period of time that the parent is likely to remain incarcerated during the child's minority. In making that determination, the court may consider factors including, but not limited to: the age of the child; the relationship, if any, that has developed between the parent and the child; and the likely period of time that the parent will remain incarcerated.*

*In re Doe (2014-26)*, 158 Idaho 548, 552, 348 P.3d 163, 167 (2015).

By focusing on the aggregate duration of Doe's incarceration, rather than the time she may be required to serve subsequent to the date of the evidentiary hearing, the magistrate court applied an erroneous legal standard.

As the magistrate court applied an erroneous legal standard to each ground that it relied upon to terminate Doe's parental rights, we vacate the judgment terminating Doe's parental rights and remand for additional findings of fact and conclusions of law applying the correct legal standards. *Rincover v. State, Dep't of Fin*., 129 Idaho 442, 444, 926 P.2d 626, 628 (1996); *Robertson v. Richards*, 115 Idaho 628, 635, 769 P.2d 505, 512 (1987).

Our review of the magistrate court's findings of fact and conclusions of law requires us to address a troubling subject that the parties have not discussed: the magistrate court's casual approach to its written findings of fact and conclusions of law. After verbally announcing its findings of fact and conclusions of law, the magistrate court stated "the State gets to do the paperwork." Presumably, this was a reference to preparation of written findings of fact and conclusions of law, because the deputy prosecuting attorney submitted proposed findings of fact and conclusions of law which a different judge signed without amendment. Those findings of fact included the following:

9. That the grounds for termination of the parent-child relationship are as follows:

9

a. The mother has failed to comply with the Court's orders in a child protection act case or the case plan, and reunification of the child with his parent has not occurred within the time standards set forth in Idaho Code § 16-1622(g), and 16-2002(3)(b);

b. That termination of the parent-child relationship is in the best interests of the parent, [Doe], and her above referred to child;[3] and/or

...

d. The mother has been incarcerated and is likely to remain incarcerated for a substantial period of time during the child's minority as the mother's crime was committed after the child was born and has remained incarcerated for a longer period of time due to her behavior.

We are troubled by the magistrate court's approach to findings of fact and conclusions of law as mere "paperwork." As we have already noted, proceedings to terminate the parent-child relationship are serious business, and we believe that the trial courts of this state should treat them with the gravity that they deserve. We are disturbed by a court practice which allows a judge who did not hear the trial to sign written findings of fact and conclusions of law, apparently without reviewing the factual findings actually made by the judge who heard the matter.

As a result of these practices, we have before us findings of fact that assert that termination of the parent-child relationship was in the child's and Doe's best interest. Although this is a ground for termination pursuant to Idaho Code section 16-2005(3), it was not a ground identified in the petition for termination and—more importantly—not a ground for termination discussed by the magistrate court when making its oral ruling.[4] Likewise, the written findings of fact assert that Doe "has remained incarcerated for a longer period of time due to her behavior," notwithstanding the trial judge's failure to discuss this issue.

We recently criticized a magistrate judge's findings of fact and conclusions of law due to the judge's "willingness to let a *pro se* litigant do his job for him." *In re Doe (2015-07)*, 159 Idaho 461, 465, 362 P.3d 536, 540 (2015). Our concern there was less that a pro se litigant

---

[3]  The conclusions of law likewise recite the holding that termination of the parent-child relationship was in the best interests of Doe and the minor child.

[4]  Doe correctly contends that the magistrate court erred by making written findings and conclusions that would justify termination based upon Idaho Code section 16-2005(3). We will give the trial court's oral pronouncement precedence over the written findings of fact and conclusions of law. *Rodriguez v. Oakley Valley Stone, Inc.*, 120 Idaho 370, 375, 816 P.2d 326, 331 (1991). Further, there was simply no evidence introduced as to whether termination was in Doe's best interests. Thus, the written determination that termination was in Doe's and M.R.'s best interests was error.

prepared proposed findings of fact and conclusions of law, but that the trial court simply adopted them without any apparent effort to review their contents. This casual approach to findings of fact and conclusions of law that we see far too frequently has led members of this Court to propose that trial courts be prohibited from soliciting or accepting proposed findings of fact and conclusions of law. We caution the trial courts of this State that the continued abuse of a practice that we presently tolerate, but discourage, may well lead to its elimination.

**C. Substantial and competent evidence supported the magistrate court's finding that termination was in M.R.'s best interests.**

As noted earlier, pursuant to Idaho Code section 16-2005(1), a court may terminate parental rights upon a finding that at least one of five specified grounds for termination have been established by clear and convincing evidence and that doing so is in the best interests of the child. *In re Doe (2014-23)*, 157 Idaho 920, 923, 342 P.3d 632, 635 (2015). Although the magistrate court's conclusions that grounds for termination existed were tainted by legal error necessitating a remand for further findings of fact and conclusions of law, we deem it appropriate to address the magistrate's finding that termination of the parent-child relationship was in M.R.'s best interests. In the magistrate court's oral findings of fact,[5] it focused on the amount of time before Doe could "start contact that would enable [her] to establish a genuine parent-child bond ..., start the process of getting a stable home, start the process of showing that [Doe] can parent the child on an ongoing basis without [her] anger issues interfering with [her] ability to parent." The magistrate court further noted that:

> The child has a positive relationship and a parental bond with the foster parent, who is also a pre-adoptive placement. The child has stability. The child needs permanency, not a chance and a hope of having permanency with mom, but the real permanency—the real stability that he's already got and the real permanency that can be had within a reasonable period in his life.

Doe's argument regarding best interests has centered on the written findings of fact and conclusions of law holding that termination was in Doe's best interests. As discussed in footnote 3, *supra*, this was error. Doe has not challenged the sufficiency of evidence supporting the magistrate court's finding that that termination is in M.R.'s best interests. Nevertheless, we have conducted an independent review of that evidence, and conclude that there was substantial and competent evidence presented at trial showing that termination was in M.R.'s best interest.

---

[5] The written conclusions of law state that "continuation in the home would be contrary to the welfare of the above named child." The magistrate judge who heard the case made no such finding.

11

Indeed, Doe herself conceded that M.R.'s life has been better since M.R. was placed in foster care.

## IV. CONCLUSION

We vacate the judgment terminating Doe's parental rights to M.R. and remand for further findings of fact and conclusions of law that are consistent with the legal principles we have explained. We award costs on appeal to Doe.

Justices EISMANN, BURDICK and W. JONES, **CONCUR**.

Chief Justice J. JONES specially concurring.

I concur in the Court's opinion but feel compelled to make two observations. First, had the magistrate court applied the correct legal standard under Idaho Code sections 16-2005(1)(b) and 16-2002(3)(b), the evidence in the record would certainly appear to support a finding that Doe had the ability to complete her case plan but willfully failed to do so. Second, as the Court finds, there was substantial and competent evidence at trial showing that termination was in M.R.'s best interest. Had the Department sought termination on the ground that it was in the best interest of both M.R. and Doe, the record would have likely supported termination under Idaho Code section 16-2005(3).

Upon remand, the magistrate court should focus some attention on a fact that stands out in the record—with whom Doe chose to leave M.R. when she was arrested for aggravated assault in August of 2012. As noted by the Court, Doe "signed over temporary guardianship" of M.R. to her parents at that time. These are the same parents that brutalized Doe when she was a child. Doe was removed from their home in 2000 and 2004 for physical abuse that resulted in head wounds and scarring that necessitated surgeries. Those parents consented to termination of their parental rights to Doe in 2004. What kind of treatment could Doe have expected M.R. to receive at the hands of those parents/grandparents?