## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 50054

| | | |
|---|---|---|
| In the Interest of: John Doe I and Jane Doe I, Children Under Eighteen (18) Years of Age. | ) ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) | Filed: February 1, 2023 |
| Petitioner-Respondent, | ) ) | Melanie Gagnepain, Clerk |
| v. | ) ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT |
| JOHN DOE (2022-40), | ) ) | BE CITED AS AUTHORITY |
| Respondent-Appellant. | ) ) ) | |

Appeal from the Magistrate Division of the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Anson L. Call, II, Magistrate.

Judgment terminating parental rights, affirmed.

David R. Martinez, Chief Bannock County Public Defender; Kent V. Reynolds, Assistant Chief Deputy Public Defender, Pocatello, for appellant.

Hon. Raúl R. Labrador, Attorney General; Jason R. Chandler, Deputy Attorney General, Boise, for respondent.

———————————————————

BRAILSFORD, Judge

John Doe (Father) appeals from the magistrate court's judgment terminating his parental rights to his two minor children. Father argues the court erred by concluding that he abandoned the children; he neglected the children; and he is and will continue to be unable to discharge his parental responsibilities; terminating his parental rights is in the children's best interests; and the Idaho Department of Health and Welfare (Department) met the requirements of the Indian Child Welfare Act (ICWA) 25 U.S.C. §§ 1901-1963. We affirm.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2021, the Department petitioned under the Child Protective Act (CPA), Idaho Code §§ 16-1601-1647, for legal custody of the children. In its petition, the Department alleged that Father committed acts of domestic violence against the children's mother[1] in their presence and had physically abused one of the children. Additionally, the Department alleged a third child[2] tested positive for methamphetamine and amphetamines at birth. Based on these allegations, the Department moved to remove the children from the home, and the magistrate court granted the motion. The court also entered an order appointing a guardian ad litem for the children.

In May 2021, the magistrate court held an adjudicatory hearing, concluded it had jurisdiction over the children under the CPA due to the lack of a stable home environment, and awarded the Department legal custody of the children. In June 2021, the court approved a case plan identifying reunification as the primary permanency goal and tasks for Father to complete. These tasks included completing a substance abuse assessment and following any treatment recommendations, submitting to random drug testing, complying with "the current No-Contact Order and Civil Protection Order," completing domestic violence and anger management treatment, resolving legal issues, maintaining stable employment, and obtaining stable housing.

Further, the magistrate court's case plan order stated the children were Indian children[3] of the Shoshone Bannock Tribes (Tribes), implicating the ICWA; the children's foster placement did not comply with the ICWA; but the parties agreed to the placement. In August 2021, the Department changed the children's foster placement to a placement with their maternal aunt. Following the first six-month review hearing, the court entered an order indicating that the

---

[1]     The mother's parental rights were terminated in subsequent legal proceedings and are not the subject of this appeal.

[2]     This third child is not Father's child. Rather, he is a half-sibling to Father's two children, and unlike those two children, the third child is not a subject of this appeal.

[3]     Under the ICWA, an "Indian child" means any unmarried person who is under the age of eighteen years and is either (1) a member of an Indian tribe or (2) the biological child of an Indian tribe member and eligible for membership in the tribe. 25 U.S.C. § 1903(4). The parties do not dispute the children at issue in this case are Indian children under the ICWA.

children's new foster placement complied with the ICWA placement preferences and that the Tribes had received service of process in the case.

In March 2022, the Department moved for an order approving an adoptive placement for the children with their maternal aunt, and the magistrate court granted the order. In April 2022, the court held an annual permanency hearing and amended the permanency goal to termination of parental rights and adoption. In May 2022, the Department petitioned to terminate Father's parental rights, and the court scheduled a termination hearing for August 19, 2022.[4]

At the termination hearing, the Department presented the testimony of a Department caseworker, an ICWA expert, and the children's guardian ad litem. As it relates to this appeal, the guardian ad litem testified that, after his appointment, he filed a petition on the children's behalf in a separate civil action for a protection order against Father based on his alleged physical abuse of one of the children, obtained such an order, and had the order extended twice. During the termination hearing, the Department admitted into evidence the original April 2021 protection order and a subsequent, extended order, which is effective until May 2023.

Additionally, the magistrate court took judicial notice of a criminal case against Father involving his conduct that gave rise to the Department's petition under the CPA to obtain legal custody of the children. Specifically, the court took notice of the fact that Father pled guilty to domestic battery in the presence of a child; in September 2021, a probation violation was filed in the case and an arrest warrant issued for Father's arrest; Father was arrested in July 2022; he admitted violating his probation; and the sentencing court imposed his underlying sentence.

Following the termination trial, the magistrate court entered written findings of fact and conclusions of law. The court concluded that Father abandoned the children by "failing to maintain a normal parental relationship with the [children]"; "Father neglected the [children] by failing to provide proper parental care and control or subsistence"; Father "demonstrated an inability to discharge parental responsibilities and such inability will continue for a prolonged indeterminate period"; and terminating Father's parental rights is in the children's best interests.

---

[4] The record shows the Department served both a notice of the termination hearing and a notice of pending proceedings and right to intervene on the Tribes. Although the record does not indicate the Tribes intervened, counsel for the Tribes appeared at and participated in the termination hearing.

The magistrate court also concluded the Department met the ICWA requirements for terminating parental rights. Specifically, the court concluded that "the Department made active efforts throughout the child protective case to avoid the breakup of the Indian family" and that "there is proof beyond a reasonable doubt that the reunification would likely result in serious emotional or physical damage to the child [sic]." Accordingly, the court entered the judgment terminating Father's parental rights.

Father timely appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id*. The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143

4

Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

## III.

## ANALYSIS

### A.    Statutory Bases for Terminating Parental Rights

Father challenges the magistrate court's conclusions that he abandoned the children under I.C. § 16-2005(1)(a), neglected the children under I.C. § 16-2005(1)(b), and is and will continue to be unable to discharge his parental responsibilities for a prolonged period of time under I.C. § 16-2005(1)(d). Father, however, does not dispute any of the factual findings supporting these conclusions. Instead, he argues the court "failed to appropriately consider and weigh the impact the [protection order] had on Father's conduct or lack thereof." He contends that the order "rendered" his ability to parent the children "an impossibility or a nullity" and that it "bound, fettered, and shackled Father from engaging, performing, and being a parent to the minor children."

The record shows that, for the entirety of this case, Father has been subject to the protection order, which the guardian ad litem obtained on the children's behalf, precluding Father from contacting the children. Regarding this order, the magistrate court found that:

> Father did not appear to contest the granting of the protection order. Father did attempt to appear and seek modification of the [order] through his attorney in the [CPA] action, but it was determined that [Father's counsel] was not representing Father in the scope of the [order], and the order continued unmodified. Father made no other efforts to modify the [order]. Father failed to appear and contest the [order] or the extension of the [order]. Father has not had contact with his children since they were removed on April 13, 2021.

5

Substantial and competent evidence supports the magistrate court's findings that Father failed to take adequate steps to modify the protection order to allow him to visit the children. Father provides no argument or explanation for this failure. Further, to the extent Father's argument attempts to raise the impossibility defense, that argument fails. Impossibility may be a defense for failing to comply with a case plan's requirements under certain circumstances. *See Idaho Dep't of Health & Welfare v. Doe (2016-14)*, 161 Idaho 596, 600, 389 P.3d 141, 145 (2016) ("[I]mpossibility may be asserted as a defense to a claim of neglect founded upon failure to comply with the requirements of a case plan."). The court, however, did not rely on Father's failure to comply with the case plan as a basis for concluding Father neglected the children.

For example, the magistrate court neither cites to I.C. § 16-2002(3)(b), which defines neglect to include a parent's failure to comply with the case plan, nor finds the children had been in the Department's custody for fifteen of the most recent twenty-two months under that section. Rather, the court appears to rely on Father's case plan failures to support its conclusion that Father neglected the children under other definitions of neglect. *See Idaho Dep't of Health & Welfare v. Doe*, 151 Idaho 356, 364, 256 P.3d 764, 772 (2011) (holding definitions of neglect in I.C. § 16-1602(31) "are certainly broad enough to encompass the consideration of a parent's compliance with a case plan as evidence to support a finding of neglect"). Moreover, Father fails to explain how the protection order created circumstances beyond his control that made it impossible for him to comply with his case plan. *See Doe (2016-14)*, 161 Idaho at 600, 389 P.3d at 145 (holding impossibility defense available only if circumstances are beyond parent's control).

Additionally, substantial and competent evidence supports the magistrate court's finding that Father neglected the children. These findings include, for example, that:

> Father has shown a propensity to violence in the presence of the children. Father failed to successfully complete probation relative to his domestic violence case and instead had his sentence imposed. Father's incarceration will be relatively short, however, Father has failed to demonstrate that he will improve his ability to discharge parental responsibilities. Father has not participated in the [child protection] case plan and thereby failed to demonstrate that he can improve his parenting and increase his capacity to discharge parental responsibilities.

In accord with these findings, the evidence shows that, among other things, Father pled guilty to domestic violence in the presence of a child; violated his probation; and failed to submit to drug testing, to complete anger management treatment, and to maintain stable housing and verifiable employment.

6

Because substantial and competent evidence supports the magistrate court's conclusion that Father neglected the children under I.C. § 16-2005(1)(b), we do not address the other statutory bases supporting the termination of Father's parental rights. When a trial court relies on alternative, statutory grounds to terminate parental rights, this Court may disregard any error in relying on one ground if the Court can sustain the judgment on the other ground. *Doe v. Doe*, 159 Idaho 461, 464, 362 P.3d 536, 539 (2015). Further, other than asserting the protection order prevented him from parenting, Father makes no arguments and cites no authority to support his assertion that the magistrate court erred in relying on the alternative bases of abandonment under I.C. § 16-2005(1)(a) and an inability to discharge parental responsibilities under I.C. § 16-2005(1)(d). *See Idaho Dep't of Health & Welfare v. Doe (2018-24)*, 164 Idaho 143, 147, 426 P.3d 1243, 1247 (2018) (ruling court does not address issues not supported by cogent argument and citation to legal authority).

## B. ICWA Requirements

Father also argues the magistrate court "erred in finding the testimony of the ICWA expert was sufficient to meet the necessary requirements of the ICWA." The ICWA addresses the concern that "an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions." 25 U.S.C. § 1901(4). Accordingly, the ICWA requires the trial court to make additional findings beyond those the CPA requires, including under 25 U.S.C. §§ 1912(d) and (f).[5] Where an Indian child is the subject of a termination proceeding, the court must find the parent's continued custody of the child is likely to result in serious emotional or physical damage to the

---

[5] The Fifth Circuit Court of Appeals has held that provisions of the ICWA, including 25 U.S.C. § 1912(d) and (f), are unconstitutional. *Brackeen v. Haaland*, 994 F.3d 249, 268 (5th Cir. 2021) (en banc), *cert. granted*, ___ U.S. ___, 142 S. Ct. 1205 (Feb. 28, 2022). The United States Supreme Court granted certiorari in *Brackeen* and heard oral arguments in November 2022, but it has not yet issued an opinion. The parties in this case, however, do not challenge either the applicability or the constitutionality of any ICWA provision. For this reason, even assuming the Supreme Court were to conclude provisions of the ICWA are unconstitutional, such a decision would not affect this case's resolution. Rather, it would only make Father's arguments under the ICWA moot. Accordingly, staying this expedited case for the Supreme Court's decision in *Brackeen* is unnecessary.

child, which finding must be supported by the testimony of an ICWA expert and evidence beyond a reasonable doubt. 25 U.S.C. § 1912(f).

Additionally, the party seeking to terminate the parental rights must "satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." 25 U.S.C. § 1912(d); *see also Idaho Dep't of Health & Welfare v. Doe*, 157 Idaho 920, 933, 342 P.3d 632, 635 (2015) (discussing ICWA requirements). "Whether the trial court correctly applied ICWA to the facts of this case is a question of law and is subject to free review by this Court." *Doe v. Roe*, 127 Idaho 452, 456, 902 P.2d 477, 481 (1995). "[T]he trial court's finding of adequate remedial efforts [required by the ICWA] must be supported by substantial and competent evidence to endure on appeal." *Id*. at 458, 902 P.2d at 483.

At the termination hearing in this case, the Department presented the testimony of an ICWA expert, and all the parties stipulated to her qualifications as an expert, except Father. Father, however, did not challenge those qualifications. The expert testified that the Department engaged in active efforts to reunite the family, including offering "transportation, connection with the children, visitation, drug and alcohol testing, planning, and every service possible." The expert further testified that the Department's efforts were unsuccessful in reuniting the family because of "negligence on the parents' behalf." The expert also opined that the "continued custody of the children with [Father] would result in serious emotional or physical damages . . . to the children."

Despite this testimony, Father argues that "the goals of ICWA have not been protected" because the expert "failed to account for the time Father was incarcerated in the past and to occur in the future" and "to take into consideration the impact of the [protection order]." He contends the protection order and his incarceration "rendered it impossible for [him] to comply with the [case plan]" and "to have any regular personal contact with [the children]." Father's argument fails for two reasons.

First, Father's reliance on the impossible defense is misplaced for the reasons discussed above. Second, the ICWA required the magistrate court to find Father's continued custody of the children is likely to cause them serious emotional or physical damage, and the Department made active efforts to provide remedial services and rehabilitation programs designed to prevent the breakup of the Indian family. *See* 25 U.S.C. § 1912(d) (requiring finding of active efforts to provide services); 25 U.S.C. § 1912(f) (requiring finding of likely serious damage beyond

8

reasonable doubt). In accord with the ICWA, the court made these specific factual findings, and Father does not challenge them on appeal. Further, the ICWA expert's consideration of Father's circumstances does not render her testimony in support of these findings invalid and otherwise unreliable. Moreover, contrary to Father's argument, the expert acknowledged Father's incarceration and the protection order during her testimony by testifying that Father "has been incarcerated and unavailable" and that he did not make efforts to address the protection order.

## C. Best Interests of the Children

Finally, Father challenges the magistrate court's conclusion that terminating his parental rights is in the children's best interests. Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

Regarding the children's best interests, the magistrate court found:

The [children] will be best served through the establishment of a permanent placement for them. Father has failed to resolve his legal issues so that he could participate in the case plan. Father has failed to demonstrate he can live a safe and sober life and create a safe and sober home environment for the [children]. The [children] have improved in their behaviors since being in the care of the Department.

Father does not challenge these factual findings but again argues the protection order "interfered with and rendered impossible [his] opportunity to engage in the [case plan], exercise visitation, and provide for the welfare of his children." Again, however, the impossibility defense is inapplicable in this case as discussed above.

Moreover, substantial and competent evidence supports the magistrate court's best interests findings. For example, the caseworker testified that Father failed to maintain contact with the Department, declined to engage in the services the Department offered, never reported stable housing, did not resolve his criminal issues or the civil protection order, and did not provide any financial support for the children. Further, the guardian ad litem testified the children were "doing spectacular" in foster care; experiencing improvement in their health and speech; and are being "protected," "loved," and cared for physically, emotionally, and medically. Based on this and other evidence, the magistrate court did not err by concluding that terminating Father's parental rights is in the children's best interests.

## IV.

## CONCLUSION

Substantial and competent evidence supports the magistrate court's conclusions that Father neglected the children; the ICWA requirements are met in this case; and terminating Father's parental rights is in the children's best interests. Accordingly, we affirm the judgment terminating Father's parental rights.

Judge GRATTON and Judge HUSKEY **CONCUR**.

10