**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 53509**

| | | |
|---|---|---|
| In the Matter of: John Doe I, A Child Under Eighteen (18) Years of Age. | ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) | Filed: March 23, 2026 |
| Petitioner-Respondent, | ) ) | Melanie Gagnepain, Clerk |
| v. | ) ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT |
| JOHN DOE (2025-46), | ) ) | BE CITED AS AUTHORITY |
| Respondent-Appellant. | ) ) ) | |

Appeal from the Magistrate Division of the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Courtnie R. Tucker, Magistrate.

Judgment and decree terminating parental rights, affirmed.

Jolene C. Maloney, Conflict Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Christopher G. Sletvold, Deputy Attorney General, Caldwell, for respondent.

---

HUSKEY, Judge

John Doe appeals from the magistrate court's judgment and decree terminating his parental rights to John Doe I (Child). Doe argues it was impossible for him to complete the case plan, there was insufficient evidence to support the magistrate court's finding that Doe neglected Child, and there was insufficient evidence that terminating Doe's parental rights is in the best interests of Child. The Department argues Doe has not preserved a claim of impossibility, but even if he had, the claim fails because it was possible for Doe to complete the case plan. The Department also argues substantial evidence supports the magistrate court's findings that Doe neglected Child and terminating Doe's parental rights is in the best interests of Child. We affirm the judgment terminating Doe's parental rights.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe is the biological father of Child. Doe was involved in a child protection case regarding Child's older siblings and had been actively working a case plan in that proceeding for some time before Child's removal in this case. When Doe's parental rights to the older siblings were terminated, Child was removed from the home based on allegations of neglect by lack of proper parental care and control pursuant to Idaho Code §§ 16-1603, -1602(31)(a), or that Child was neglected, abused, abandoned, homeless, or lacking a stable home environment pursuant to I.C. § 16-1603. Following an adjudicatory hearing, the magistrate court found Child fell within the purview of the Child Protective Act (CPA) but entered a disposition allowing Child to remain in the home with Doe and Mother under the protective supervision of the Idaho Department of Health and Welfare (Department).

A case plan was ordered for both parents. Doe's case plan was designed to provide support for Doe's diagnosis of a cognitive disability. Thereafter, the magistrate court ordered Child removed from the home, vested custody of Child with the Department, and Child was placed in foster care. The Department ultimately filed a petition to terminate Doe's parental rights because Child was neglected, abused, abandoned, homeless, or lacked a stable home environment, pursuant to I.C. § 16-2002(3)(a). Alternatively, the Department alleged that Doe neglected Child and had failed to complete the case plan and Child had been in the Department's custody for fifteen of the most recent twenty-two months, pursuant to I.C. § 16-2002(3)(b). Doe filed an answer to the petition and argued he was unable to comply with the case plan at the time it was ordered, he lacked "the present ability to comply" with the case plan, the Department failed to provide reasonable efforts to aid Doe in completing the case plan, and it was impossible for Doe to complete the case plan as understood by *Idaho Dep't of Health & Welfare v. Doe*, 161 Idaho 596, 389 P.3d 141 (2016). Following the termination trial, the magistrate court found Doe neglected Child and that terminating Doe's parental rights is in the best interests of Child.[1] Doe appeals.

---

[1] Mother's parental rights to Child were also terminated but are not at issue in this appeal.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

On appeal, Doe asserts the magistrate court erred in finding he neglected Child pursuant to I.C. § 16-2002(3)(b) because compliance with the case plan was impossible. Doe also asserts the magistrate court erred in concluding that termination of his parental rights is in the best interests of Child. The Department argues the magistrate court did not err in any of its findings of fact or legal conclusions.

### A.    Statutory Basis for Termination

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty

interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

Idaho Code § 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

Idaho Code § 16-2002(3)(b) defines "neglect" as occurring when the parent has failed to comply with the court's orders or the case plan in a CPA case and the Department has had temporary or legal custody of the child for fifteen[2] of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department.

In Doe's answer to the petition to terminate his parental rights, Doe raised an affirmative defense that it was impossible for him to complete the case plan. However, other than identifying the defense, Doe did not raise the issue during the CPA case or the termination proceedings. Doe did not specifically raise the issue during the termination trial and elected not to provide a written closing argument. Generally, issues not raised below may not be considered for the first time on appeal. *Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991). Consequently, Doe's argument regarding impossibility is unpreserved and he has waived this argument on appeal.

Doe next argues there was insufficient evidence to establish neglect. We disagree. The magistrate court noted a case plan was designed to address the safety issues that caused Child to be removed from the home and accounted for Doe's cognitive disability. The magistrate court

_____

[2] At the time the Department filed the petition to terminate Doe's parental rights, the statutory timeframe under Idaho Code § 16-2002(3)(b) was fifteen out of the most recent twenty-two months. Subsequently, the statute was amended to twelve of the most recent twenty-two months. The amendment does not affect the analysis in this case.

found that although Doe appeared to make some effort to engage in and complete some of the tasks in the case plan, Doe did not complete key tasks listed in his case plan or demonstrate the ability to safely parent Child. Ultimately, the magistrate court found Child was neglected pursuant to I.C. § 16-2002(3)(b). The magistrate court's findings are supported by the record.

Task 1A of Doe's case plan required him to complete a mental health, psychological, and parenting evaluation, comply with the recommendations of the evaluation, and submit proof of completion. The evaluation recommendations were that Doe: (1) obtain a payee for his disability income to assist him with his finances; (2) apply for adult developmental services; (3) participate in community based rehabilitation services (CBRS); (4) participate in counseling; and (5) participate in in-home parenting services. The magistrate court found that while Doe participated in some CBRS, counseling, and in-home parenting services, Doe had not completed any of those recommendations by the time of the termination trial. The caseworker testified that Doe had not completed the in-home parenting services. The caseworker also testified that Doe had not completed the CBRS or individual counseling and that while some clients with disabilities complete their CBRS and counseling, others require assistance even after the CPA case has closed.

The evaluator noted that Doe's attitude gets in the way of his functioning because Doe does not believe he needs help and does not appear to have insight about his disability. Obtaining a payee was listed as a clinical recommendation. The evaluator also "highly recommended that [Doe] get connected to a multidisciplinary developmental disability service agency." It was further noted in the recommendations that Doe may need access to an independent advocacy organization or group to assist him with completing his case plan. However, Doe refused to fill out the paperwork for disability services or assist the Department so he could be enrolled in those services. There was no evidence presented that Doe was unable to comply with the recommendations because of his disability. For example, the magistrate court found that Doe would not assist the Department in applying for developmental disability services because Doe did not believe he needed the assistance.

Doe admits he did not obtain a payee or collaborate with the Department to enroll in disability services but argues his "sense of personal dignity made him resistant to accepting those services" and "it is not clear that he was ever told that *not* applying for a payee and DD services would be deemed a failure to comply with his case plan" and prevent reunification. The caseworker testified she reviewed the case plan with Doe, and they discussed some of the tasks

5

"throughout the case frequently." Thus, Doe was aware of what he needed to complete in order to reunify with Child and have the CPA case closed. As stated above, Task 1A required Doe to comply with the recommendations of the evaluations. Doe's failure to comply with the recommendations was not because he did not understand the recommendations, but instead because he did not believe he needed the assistance some of the recommendations addressed. Individuals are often required in CPA cases to participate in services that they subjectively believe they do not need. Doe's belief that he did not need the services neither excuses his failure to comply with the evaluation recommendations nor negates the requirement that Doe either comply with the recommendations or file a motion in the magistrate court explaining why that task should be amended or removed. Doe did not comply with the recommendations or file the required motion. The magistrate court's findings as to Task 1A are supported by substantial evidence.

Task 1B required Doe to "demonstrate his ability to ensure [Child's] medical, dental, educational, and developmental needs are being met by . . . scheduling appointments, attending appointments, and following recommendations made by [Child's] providers." The caseworker testified that Doe missed one out of "seven or eight total" appointments. The caseworker indicated she felt Doe completed this task. The magistrate court found Doe attended most, but not all, of Child's appointments.

Task 1C required Doe to maintain a sanitary, hazard-free, and stable home. Related was Task 1D, which required Doe to seek approval from the Department prior to allowing individuals to reside in his home or on his property. Specific approval was required for three identified individuals because they posed potential safety risks to Child. Similarly, these three individuals could not be around Child absent preapproval by the Department.

The magistrate court found Doe's efforts on these tasks were "problematic" throughout the case. The magistrate court found Doe had a pattern of associating with individuals who posed a safety risk to Child, including an individual who reportedly sexually abused Child's older siblings. Because Doe continued to maintain relationships with unsafe individuals and indicated he would rely on at least one of them to provide support for his parenting, the Department required Doe to obtain approval prior to allowing any individual on his property or to reside in his home. The magistrate court found that, despite this requirement, Doe allowed individuals into his home and around Child without Department approval. These individuals posed a threat to Child's safety. According to the magistrate court, Doe did not demonstrate an understanding the safety threat

6

these individuals posed to Child and attempted to justify their presence by explaining they were not around Child. The magistrate court found Doe engaged in a "blatant disregard" of a well-established safety threat, casting doubt on Doe's ability to keep Child safe. The magistrate court found Doe does not recognize safety threats to Child, is unable to prioritize Child's needs, and lacks insight into his choices and cannot explain why he makes the wrong decisions regarding his boundaries with unsafe individuals.

The caseworker testified Doe completed part of Task 1C--to maintain a sanitary, hazard-free, and stable home--in that Doe's home was sanitary and hazard-free, but it was not stable. The caseworker testified about the three individuals who were considered external risk factors for Child--Tyler, Sheila, and Bud. Doe allowed Tyler into the home without getting preapproval from the Department. Doe justified this decision by explaining to the caseworker that Child was not present when Tyler was in Doe's home. Doe also allowed Sheila to be around Child while Doe was collecting a debt from Sheila. Doe settled the debt by having Sheila pay Doe's phone bill; Doe and Child traveled with Sheila to do so. However, the caseworker could not say whether Sheila had been around Child on other occasions--only that Doe had admitted Sheila was around Child the one time. The caseworker testified Doe was well aware of the requirement that he had to get approval for any individual to be around Child and that the three identified people could not be around Child. According to the caseworker, Doe's knowing violation of that agreement caused the Department to doubt Doe's compliance with other agreements and to question how often Doe had either violated other agreements or allowed unsafe individuals to be around Child, which created a potential safety risk for Child.

Furthermore, the evaluator found Doe "has a difficult time caring for himself and it is unlikely he can meaningfully take care of minor children under his care." The evaluations, admitted as exhibits at trial, and the testimony presented at trial support the magistrate court's conclusion that Doe failed to complete these case plan tasks.

The case plan also required Doe to engage in community and/or in-home parenting services--Task 1E--and during visitation with Child, demonstrate the skills learned from the services provided to him--Task 1F. The magistrate court found Doe engaged with an in-home parenting service with varying degrees of success. The caseworker testified that Doe did well with the initial provider, but when those services transitioned to a different provider in December 2024, Doe's participation decreased. The magistrate court found Doe's participation in these services

7

was inconsistent. During the program, Doe was sometimes focused on Child but at other times, Doe was more focused on and engaged with the adults rather than Child.

According to the caseworker, the first negative report from the parenting coach came within a few days of Doe allowing an unapproved individual to be around Child. The report from the parenting coach shortly before trial indicated that Doe had made no progress in his ability to focus on Child, to accept the guidance of the program, and to naturally meet Child's needs without redirection. The caseworker testified that although Doe had a bond with Child, Doe did not have the capacity to understand and prevent safety threats to Child. From April 2025 until trial, there were negative reports from the coaches regarding Doe's parenting of Child during the coaching sessions and, at trial, there was testimony Doe did not always understand or was unwilling to receive guidance during the time the coaches were present.

Task 1G required Doe to participate in community-based services that address healthy boundaries and communication related to his relationship with Mother. Doe was sometimes in a romantic relationship with Mother but by the time of trial, Doe testified they were roommates rather than a romantic couple. However, the two combined their money so they could meet household expenses and Doe relied on Mother to assist him in parenting Child. Despite this, Doe quit attending counseling services because, according to Doe, once he and Mother were no longer romantically linked the counselor would no longer provide services. According to the caseworker, the counseling service indicated it was Doe's decision to no longer attend.

Task 1H required Doe to identify an appropriate safety monitor and develop a safety plan prior to Child returning home. Related, Task 2B required Doe to develop a support system that would continue after the CPA case was closed. Doe relied on Mother as part of his support system and indicated he could not parent Child without Mother's help. Although Mother indicated she was not willing to parent Child, Doe continued to suggest she would be part of his support system. Another individual Doe relied upon for support was Sheila, an individual who was not authorized to be around Child because of safety concerns. Finally, Doe named Child's former foster parent as part of his support system, even though the foster parent worked full-time and had other foster children in her home. The caseworker testified that Doe identified an appropriate safety monitor (presumably the previous foster parent) but did not identify who that monitor was or whether that was a realistic choice.

The case plan required Doe to participate in visitation with Child. The magistrate court found Doe and Child developed a good relationship and Child was bonded to Doe. However, although Doe graduated to in-home, unsupervised visits, because Doe permitted an unauthorized individual to be around Child during that time, the Department changed the visitation to supervised visits.

As to case closure, the magistrate court found that Doe demonstrated limited understanding regarding Child's well-being--Doe did not understand why Child was removed from his care, was vague in his understanding of his case plan tasks, and had difficulty articulating concepts related to enhanced parenting skills or how the case plan tasks would enhance those skills. Ultimately, while recognizing Doe completed some of the case plan tasks, the magistrate court concluded that Doe "did not demonstrate the ability to consistently and safely parent [Child] and meet his needs full time. [Doe's] ability to provide a safe and stable home environment for [Child] remains in question." Based on the evidence presented, the magistrate court did not err in finding Doe neglected Child pursuant to I.C. § 16-2002(3)(b) by failing to complete the case plan tasks and Child had been in the Department's custody for fifteen of the most recent twenty-two months.

## B. Best Interests

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State*, *Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

The magistrate court found Child was doing well in his foster placement with his older siblings, to whom he is extremely bonded, and has access to the educational and developmental services he needs to address his delays, which were not being addressed by Doe at the time of

Child's removal. The foster family has provided a safe and stable environment for Child and have been identified as a permanent placement for Child. The magistrate court noted that the Department testified Child needed stability and placement in a permanent home with primary caregivers who can consistently meet his needs. The magistrate court found Child would not be safe in Doe's care based on Doe's pattern of choices and behavior. The magistrate court found it was unclear whether additional time to work the case plan would make a positive difference. The evidence presented supports the magistrate court's finding that termination of Doe's parental rights is in Child's best interests.

## IV.

## CONCLUSION

The magistrate court did not err in concluding Doe neglected Child and it is in Child's best interests to terminate Doe's parental rights. Doe's claim of impossibility, where it rests solely on the efforts of the Department during the CPA case, is not properly raised in a termination proceeding. The judgment of the magistrate court terminating Doe's parental rights is affirmed.

Chief Judge TRIBE and Judge LORELLO, **CONCUR**.